UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| REBEKAH GRIFFIN<br>1951 Crystal Lake Dr. Apt. U398<br>Shelby Township, MI 48316<br><br>On behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br>　v.<br><br>LADY JANE'S HAIRCUTS FOR<br>MEN HOLDING COMPANY, LLC<br>3921 Rochester Road<br>Troy, MI 48083<br><br>　c/o Its Resident Agent<br>　Tim McCollum<br>　34915 Woodward Ave.<br>　Birmingham, MI 48083<br><br><br>　　　　Defendant. | CASE NO. 3:18-cv-11075<br><br>JUDGE ROBERT H. CLELAND<br>Magistrate Judge Anthony P. Patti<br><br><br><br><br><br><br><br><br><br><br>**PLAINTIFF'S FIRST AMENDED**<br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT UNDER**<br>**THE FAIR LABOR STANDARD**<br>**ACT AND STATE LAW**<br><br><br>Jury Demand Endorsed Hereon |

Plaintiff Rebekah Griffin (hereinafter "Plaintiff"), by and through counsel, respectfully files this Class and Collective Action Complaint against Defendant Lady Jane's Haircuts for Men Holding Company, LLC.

## INTRODUCTION

1. This case challenges practices of Defendant by which it willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as

Michigan's minimum wage and overtime compensation statutes, MICH. COMP. LAWS §§ 408.411, *et seq*.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) ("Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons, defined herein, who assert factually-related claims under Michigan's minimum wage and overtime compensation statutes (the "Michigan Class").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

7. At all times relevant, Plaintiff Rebekah Griffin was a citizen of the United States and a resident of Maricopa County, Arizona or Macomb County, Michigan.

8. Defendant Lady Jane's Haircuts for Men Holding Company, LLC ("Lady Jane's") is a Michigan limited liability company headquartered and having its principal place of business in the Eastern District of Michigan at 3921 Rochester Road, Troy, MI 48083.  Its resident agent is Tim McCollum, 34915 Woodward Ave., Birmingham, MI 48083.

## FACTUAL ALLEGATIONS

### Defendant's Business

9. Defendant owns and operates retail shops under the name "Lady Jane's Haircuts for Men" throughout the United States and its territories.  The shops sell haircuts and grooming products for men.

10. Lady Jane's utilizes employees, whom it calls "stylists," to give the haircuts and sell the grooming products at the shops.  Lady Jane's supplies all

products sold in the shops, through vendors with which it has contractual relationships.

11.  Lady Jane's manages the shops through district and in-store managers who supervise the stylists and the sales.

### Lady Jane's' Employment of Plaintiff and Other Stylists

12.  Plaintiff, the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), and all members of the Michigan Class, were unlawfully classified by Defendant as "independent contractors," but were in fact non-exempt employees of Lady Jane's.

13.  Plaintiff Rebekah Griffin worked as a stylist at Lady Jane's shops in Chandler, Arizona and in and around Shelby Township, Michigan, from about 2016 to September, 2018.

### Defendant's Status as "Employer"

14.  Lady Jane's was an "employer" of Plaintiff, the Potential Opt-Ins, and the Michigan Class Members within the meaning of the FLSA, 29 U.S.C. § 203(d), and Michigan Law, MICH. COMP. LAWS §§ 408.412-408.413.

15.  Defendant claims that its business—"Lady Jane's Haircuts for Men"—is "the world's most popular men's grooming salon."  According to its website, Defendant's business has "grown from a single shop in Saint Clair Shores, MI to more than 100 stores in more than 15 states."  Chad Johnson, the business's

4

owner and principal manager, is quoted as saying, "I'd be lying if I didn't say the goal is to be nationwide as quickly as possible."

16. Defendant attributes its success to maintaining centralized control and uniformity of operations over the 100-plus stores. "The leather recliners in the lobby, the double-digit HD Plasma TVs throughout the salon, sports memorabilia covering the walls, and a truly fun and inviting staff." "This is just how we do business," Johnson says. "There is no point in competing if you aren't going to be the best. I refuse to put a subpar product or service in any of my salons."

17. Johnson owns and operates the 100-plus stores through a labyrinthine network of corporate entities, all sharing the "Lady Jane's Haircuts for Men" name.

18. In Michigan alone, Johnson and his holding company own and operate:

>Lady Jane's Haircuts for Men (Corp. No. 800675622)

>Lady Jane's Haircuts for Men - Brighton (No. 801679897)

>Lady Jane's Haircuts for Men - Grand Rapids (No. 801640829)

>Lady Jane's Haircuts for Men - Grandville (No. 801649166)

>Lady Jane's Haircuts for Men - Novi (No. 801660124)

>Lady Jane's Haircuts for Men - Walker (No. 801679210)

>Lady Jane's Haircuts for Men - Woodward (No. 801607431)

19. This multiplicity of operationally-unified entities is repeated nationally. A complaint against Chad Johnson and his companies in 2010 identified more than twenty-five separate entities with variations of the "Lady Jane's Haircuts for Men" name. *See* Amended Verified Complaint (ECF #4) in *Wolfe v. Johnson.*, Case No. 10-13642 (E.D. Mich. 2010). Johnson, in his answer, "admit[ted] being the owner of all." Answer in *Wolfe* (ECF #8). The entities included:

> Lady Jane's Buffalo NY, LLC
> Tonawanda, New York
>
> Lady Jane's Fort Wayne, LLC
> Fort Wayne, Indiana
>
> Lady Jane's Greece, LLC
> Greece, New York
>
> Lady Jane's Lyndhurst OH, LLC
> Lyndhurst, Ohio
>
> Lady Jane's Naperville IL, LLC
> Naperville, Illinois
>
> Lady Jane's Palatine, LLC
> Palatine, Illinois
>
> Lady Jane's Parma Heights OH, LLC
> Parma Heights, Ohio
>
> Lady Jane's Rochester NY, LLC
> Webster, New York
>
> Lady Jane's Toledo, LLC
> Toledo, Ohio

Lady Jane's Williamsville, LLC
Williamsville, New York

Lady Jane's Cheektowaga, LLC
Cheektowaga, New York

### **Defendant's Misclassification of Employees**

20. Defendant Lady Jane's, in violation of law, misclassified its "stylists" as so-called "independent contractors."

21. In fact, Lady Jane's' stylists were employees of Lady Jane's according to the standards applicable under the FLSA and Michigan law.

22. Lady Jane's trains its stylists. Lady Jane's required Plaintiff to complete a training period at a Lady Jane's shop during which she received little or no pay.

23. Lady Jane's controlled the stylists' days and hours and required them to be in the shops during their scheduled periods. Lady Jane's typically required Plaintiff and other stylists to work at the shops from 8:45AM to 8PM on Fridays and from 9:45AM to 8PM on other days. Plaintiff regularly worked over 40 hours per workweek.

24. Lady Jane's directs and controls its stylists' work through instructions as well as through posted manual-labor assignments. The stylists are required to answer phones and perform daily cleaning work assigned them by Lady Jane's.

Stylists are assigned "laundry" work as well as weekly "deep-cleaning" work, which includes mopping of floors and washing of walls and baseboards.

25. Lady Jane's controls the services its stylists may provide to customers and the prices charged for such services. Lady Jane's posts lists of services and prices on the shops' walls, and the stylists are required to adhere to the posted lists.

26. Lady Jane's controls the products its stylists sell and the prices at which they must sell them. Lady Jane's supplies all products sold in the shops, through vendors with which it has contractual relationships. Stylists are required to sell those products exclusively, at prices determined by Lady Jane's.

27. Through its district and in-store managers and by other means, Lady Jane's controls the nature and frequency of the services its stylists perform and the sales they make. Lady Jane's establishes and disseminates standards, averages, and quotas that stylists must meet on a daily and weekly basis. Managers observe and correct the stylists in the course of their work, monitor their compliance with the established standards, averages, and quotas, and admonish and discipline them for non-compliance.

28. Lady Jane's controlled the compensation its stylists earned for the work. Lady Janes dictated the services the stylists could provide to customers and the compensation paid to the stylists for such services.

29. As a matter of economic reality, the stylists were economically dependent on Lady Jane's.

30. The stylists performed work that was integral to Lady Jane's' primary business.

31. Lady Jane's controlled the work its stylists performed and the manner in which they performed it.

32. The stylists worked for Lady Jane's in comparatively low-paying jobs, and typically held their positions with Lady Jane's for long periods of time.

33. Lady Jane's' investments and expenditures substantially outweighed any expenditures required on the part of the stylists.

34. Any opportunities the stylists had to earn remuneration were unilaterally determined and controlled by Lady Jane's.

35. Lady Jane's determined the work its stylists performed and the hours during which they performed that work.

36. The stylists were under the direct supervision and control of Lady Jane's' managers and supervisors.

37. Lady Jane's unilaterally determined the amounts its stylists were paid.

38. The stylists' work for Lady Jane's regularly consumed the normal workweek of full-time employees.

### Lady Jane's' Failure to Pay Minimum Wages and Overtime Compensation

39. Plaintiff, the Potential Opt-Ins, and the Michigan Class Members frequently worked more than forty hours in a single workweek.

40. The FLSA required Lady Jane's to pay the stylists at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

41. However, Lady Jane's, having unlawfully misclassified Plaintiff, the Potential Opt-Ins, and the Michigan Class Members as "independent contractors," failed to pay them minimum wages and overtime compensation.

42. Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The FLSA's minimum wage requirements are not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment. *Id*. An FLSA violation occurs "in any workweek when the cost of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id*.

43. Defendant Lady Jane's failed to pay at least the minimum wage to Plaintiff, the Potential Opt-Ins, and the Michigan Class Members. Lady Jane's paid them low rates of compensation, and then deducted charges and expenses that

Lady Jane's required the stylists to incur. In some workweeks, the amounts paid to the stylists "finally and unconditionally or 'free and clear'" did not equal or exceed the minimum wage.

44. Lady Jane's failed to pay overtime compensation at one and one-half times the employees' "regular rate" for all hours worked in excess of forty hours in a workweek.

45. Lady Jane's knew that Plaintiff, the Potential Opt-Ins, and the Michigan Class were entitled to minimum wages and overtime compensation pay under federal and state law, or acted in reckless disregard for whether they were so entitled.

## The Willfulness of Defendant's Violations

46. Lady Jane's knew that Plaintiff, the Potential Opt-Ins, and the Michigan Class were entitled to minimum wages and overtime compensation pay under federal and state law, or acted in reckless disregard for whether they were so entitled.

47. Defendant intentionally and willfully circumvented the requirements of the FLSA and state law. Defendant designed an "independent contractor" pay structure in an attempt to circumvent those requirements.

48. Defendant deliberately concealed their unlawful wage-and-hour practices from scrutiny by governmental agencies. In advance of an inspection by

the United States Department of Labor, Lady Jane's removed its schedules, price lists, and other postings from shop walls and coached employees on how they must respond to questions. Defendant did so in a planned effort to mislead DOL investigators and avoid liability for unlawful wage-and-hour practices.

## COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

50. Plaintiff Griffin brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

51. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendant's FLSA violations consist of:

> All stylists who worked at Lady Jane's Haircuts for Men as "independent contractors" during the period three years preceding the commencement of this action to the present.

52. Such persons are "similarly situated" with respect to Defendant's FLSA violations in that all were misclassified by Defendant as so-called "independent contractors," all were subjected to and injured by Defendant's unlawful practice of failing to pay minimum wages and overtime compensation to

its stylists, and all have the same claims against Defendant for unpaid minimum wages and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

53. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

54. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of several thousand persons. Such persons are readily identifiable through the records Lady Jane's has maintained, and was required to maintain, pursuant to the FLSA and Michigan law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; MICH. COMP. LAWS § 408.417

## CLASS ACTION ALLEGATIONS

55. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

56. Plaintiff Griffin brings this case on behalf of herself and other members of a proposed Michigan Class, defined as:

> All stylists who worked at Lady Jane's Haircuts for Men as "independent contractors" in Michigan during the period three years preceding the commencement of this action to the present.

57. The Michigan Class is so numerous that joinder of all Class Members is impracticable. Plaintiff cannot yet state the exact number of Class Members but avers, upon information and belief, that they consist of hundreds of persons. The number of Class Members as well as their identities are ascertainable from records Lady Jane's has maintained, and was required to maintain, pursuant to the FLSA and Michigan law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; MICH. COMP. LAWS § 408.417.

58. There are questions of law or fact common to the Michigan Class, including but not limited to:

   a) Whether Defendant misclassified the stylists as "independent contractors," when they in fact were non-exempt employees.

   b) Whether Defendant paid Plaintiff and other Class Members at least the minimum wage;

   c) Whether Defendant paid overtime compensation to Plaintiff and other Class Members at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek.

59. Plaintiff's claims are typical of the claims of other members of the Michigan Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other Class Members.

60. Plaintiff will fairly and adequately protect the interests of the Michigan Class. Plaintiff's interests are not antagonistic to, but rather are in

unison with, the interests of other Class Members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Michigan Class in this case.

61. The questions of law or fact that are common to the Michigan Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Minimum Wage and Overtime Violations)

63. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

64. Plaintiff brings this claim for violation of the FLSA's minimum wage overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to becoming a party to this action pursuant to § 216(b) will be filed with the Court.

65. The FLSA required Defendant to pay the stylists at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

66. Defendant failed to pay minimum wages and overtime compensation to Plaintiff and the Potential Opt-Ins, in violation of the FLSA.

67. As more fully described above, Defendant, in violation of law, misclassified the stylists as so-called "independent contractors," when in fact they were employees of Defendant according to the standards applicable under the FLSA.

68. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force and effect of law.

69. As a result of Defendant's violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive minimum wages and overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid minimum wages and overtime

compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Michigan Minimum Wage Violations)

70. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

71. Plaintiff brings this claim under Michigan's Workforce Opportunity Act on behalf of herself, the Potential Opt-Ins, and the Michigan Class Members.

72. MICH. COMP. LAWS § 408.414 required Lady Jane's to pay its stylists at least the minimum wage.

73. Lady Jane's failed to pay minimum wages to Plaintiff, the Potential Opt-Ins in Michigan, and the Michigan Class Members in violation of MICH. COMP. LAWS § 408.414, entitling them to "monetary relief" including "liquidated damages" under MICH. COMP. LAWS § 408.419.

## COUNT THREE
### (Michigan Overtime Violations)

74. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75. Plaintiff brings this claim for violation of the Michigan overtime compensation statute, MICH. COMP. LAWS § 408.414a, on behalf of herself, the Potential Opt-Ins in Michigan, and the Michigan Class Members.

76. Lady Jane's violated the Michigan overtime compensation statute, MICH. COMP. LAWS § 408.414a, by failing to pay overtime compensation to its stylists when due.

77. Lady Jane's' violations of MICH. COMP. LAWS § 408.414a injured Plaintiff, the Potential Opt-Ins in Michigan, and the Michigan Class Members in that they did not receive overtime compensation due to them pursuant to that statute, entitling them to "monetary relief" including "liquidated damages" under MICH. COMP. LAWS § 408.419.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Michigan Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Michigan Class;

D. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Michigan

    Class in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

      Respectfully submitted,

      s/ *Joseph F. Scott*
      Joseph F. Scott (OH 0029780)
      Ryan A. Winters (OH 0086917)
      Kevin M. McDermott II (OH 0090455)
      Scott & Winters Law Firm, LLC
      The Caxton Building
      812 Huron Rd. E., Suite 490
      Cleveland, OH 44115
      P: (216) 912-2221   F: (216) 350-6313
      jscott@ohiowagelawyers.com
      rwinters@ohiowagelawyers.com
      kmcdermott@ohiowagelawyers.com

      s/ *Thomas A. Downie*
      Thomas A. Downie (OH 0033119)
      46 Chagrin Falls Plaza #104
      Chagrin Falls, Ohio 44022
      Office: 440-973-9000
      Direct: 440-829-9614
      tom@chagrinlaw.com

      s/ *Bryan Yaldou*
      Bryan Yaldou (P70600)
      23000 Telegraph Rd., Suite 5
      Brownstown, MI 48134
      (734) 696-9200
      (734) 692-9201

      *Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                        s/ *Joseph F. Scott*
                                        Joseph F. Scott (OH 0029780)